**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 4:12-CV-918 SNLJ** |
| | ) | |
| **FRANKLIN COUNTY, MISSOURI, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff Jane Doe brought this suit against Franklin County, Missouri, and John Griesheimer, individually and in his official capacity as Presiding Commissioner of Franklin County. Plaintiff, pursuant to 42 U.S.C. § 1983, challenges the constitutionality of the County's practice of leading and sponsoring a prayer at its Board of Commissioners' meetings. Defendants have three pending motions: (1) Defendants' Motion to Dismiss Based on Legislative Immunity and the Political Question Doctrine (#42), (2) Defendants' Motion to Dismiss Based on Standing (#44), and (3) Defendants' Motion to Compel (#47). The matters have been fully briefed[1] and are now ripe for disposition.

I.      **Factual Allegations**

According to the Complaint, plaintiff attended Franklin County Commission meetings in 2011 because she was interested in the Commission's discussions and decisions on matters on the agenda. The Commission agenda and meeting minutes reflect a "moment of silence," but plaintiff alleges that the "commissioner offered a prayer instead." Specifically, plaintiff alleges

---

[1]The Court notes, however, that defendants did not file a reply in support of their Motion to Dismiss Based on Standing (#44). The time for doing so has now passed.

that defendant Griesheimer opened the November 29, 2011 commission meeting with the

following prayer:

> Dear Lord, we thank you for all the great things you have given us. We thank you
> for the very nice weather and incredible rain that we've had. We hope everybody.
> We hope. We thank you for all the great things that we're thankful for for
> Thanksgiving and for getting us together with our family and friends. We would
> ask you to watch over those who in the Armed Forces, who are either here or
> away from here in harm's way. We ask you to watch over them and protect them.
> In Jesus' name we pray. Amen.

Cmplt. ¶ 19.  Plaintiff's complaint also quotes similarly-themed prayers with which defendant

Griesheimer opened Commission meetings on December 6, 2011, December 13, 2011, and

December 20, 2011.  Before commencing the prayers, plaintiff alleges that Griesheimer instructs

those attending the meeting to bow their heads.  Plaintiff further alleges that meeting attendees

often responded with a chorus of "amen," and that the attendees sometimes respond to parts of

the prayers orally or by raising their arms toward the ceiling.  Plaintiff brought this action against

Franklin County and defendant Griesheimer claiming that (Count I) the defendants' sponsorship

of sectarian prayers at Commission meetings violates the First and Fourteenth Amendments of

the United States Constitution, and (Counts II and III) the defendants' sponsorship of sectarian

prayers at commission meetings violates Article I, sections 6 and 7 of the Constitution of 1945 of

the State of Missouri.

## II.     Motions to Dismiss

Defendant Griesheimer contends that he has absolute legislative immunity under the

Speech or Debate Clause of the United States Constitution, Art. I, § 6, cl. 1, and that this matter

should be dismissed as to him pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6).  In his reply brief, defendant Griesheimer argued that plaintiff's claims against him in

-2-

his official capacity should be dismissed and that thus Franklin County must be dismissed as a defendant.  Finally, defendant Griesheimer contends this matter should be dismissed pursuant to Rule 12(b)(6) because he states the plaintiff lacks standing to bring this lawsuit.

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).  "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the respondent is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).  The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the  nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)).

Federal Rule of Civil Procedure 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction over the claim. The standards applied to a Rule 12(b)(1) motion to dismiss are the same as those that apply to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Vankempen v. McDonnell Douglas Corp*., 923 F. Supp. 146, 147 (E.D. Mo. 1996) (citing *Satz v. ITT Fin. Corp*., 619 F.2d 738, 742 (8th Cir. 1980)).

### A.      Motion to Dismiss Based on Legislative Immunity (#42)

The Constitution provides that

> The Senators and Representatives ... for any Speech or Debate in either House,
> they shall not be questioned in any other Place.

U.S. Const. art. I, § 6, cl. 1.  The above-quoted "Speech or Debate Clause" forms the basis of the "legislative immunity" advocated here by defendant.  Although defendant is not a United States congressman, a "local legislator is entitled to absolute legislative immunity for acts undertaken within the 'sphere of legitimate legislative activity.'"  *Leapheart v. Williamson*, 705 F.3d 310, 313-14 (8th Cir. 2013) (quoting  *Bogan v. Scott–Harris,* 523 U.S. 44, 54 (1998)).

At issue here is whether defendant Griesheimer's act — opening Franklin County Commission sessions with prayer — is within the "sphere of legislative activity" such that legislative immunity attaches.

"The Speech or Debate Clause was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch. It thus protects Members against prosecutions that directly impinge upon or threaten the legislative process."  *Gravel v. United States*, 408 U.S. 606, 616 (1972). Considerations of the Clause's historical purpose have been critical to the Supreme Court's considerations of the Clause's application.  The Supreme Court has observed that its jurisprudence

> reflect[s] a decidedly jaundiced view towards extending the Clause so as to
> privilege illegal or unconstitutional conduct beyond that essential to foreclose
> executive control of legislative speech or debate and associated matters such as
> voting and committee reports and proceedings.... In each case, protecting the
> rights of others may have to some extent frustrated a planned or completed
> legislative act; but relief could be afforded without proof of a legislative act or the
> motives or purposes underlying such an act. No threat to legislative independence

was posed, and Speech or Debate Clause protection did not attach.

*Id.* at 621 (discussing *Kilbourn v. Thompson*, 103 U.S. 168 (1881); *Dombrowski v. Eastland*, 387 U.S. 82 (1967), and *Powell v. McCormack*, 395 U.S. 486 (1969)).  Defendants here advocate for a *per se* test, that is, if the subject act is any "speech" that occurred in the House or other legislative body, then it is protected by the Speech and Debate Clause.

Of particular note, defendant argues, is *United States v. Johnson*, in which a former U.S. Representative was convicted of the federal conflict of interest statute and conspiracy to defraud the United States based on, among other things, a speech the congressman read to Congress.  383 U.S. 169 (1966).  The speech was in support of certain savings and loan associations, and the congressman was paid for his "services."  *Id.* at 172.  The Supreme Court set aside the conspiracy conviction and ordered a new trial on the other counts because the conspiracy count was premised entirely on the speech and the other counts were undoubtedly affected by evidence pertaining to the (protected) speech.  *Id.* at 176-77.  The Supreme Court held that "a prosecution under a general criminal statute dependent on such inquiries necessarily contravenes the Speech or Debate Clause."  *Id.* at 169.  "However repensible such conduct may be, we believe the Speech or Debate Clause extends at least so far as to prevent it from being made the basis of a criminal charge against a member of Congress of conspiracy to defraud the United States by impeding the due discharge of government functions."  *Id.* at 180.

Defendant charges that if Johnson's criminal activities were immune, then defendant Griesheimer's invocations are, too.  Further, defendant notes that the Court must defer to the judgment of the legislative body as to what is an "essential" part of legislative activity, citing *Doe v. McMillan*, 412 U.S. 306, 313 (1973).  In *McMillan*, plaintiffs were parents of school

-5-

children who were the subjects of a Congressional report regarding academic and disciplinary failings.  The Supreme Court held that legislative immunity applied to the defendant members of the House of Representatives Committee insofar as they had engaged in legislative acts of compiling the report, referring it to the House, or voting for its publication.  *Id.* at 311-12.  The plaintiffs argued that including the students' personal details in the report should be actionable because it was unnecessary and irrelevant to any legislative purpose.  *Id.* at 312.  The Supreme Court disagreed and observed that although we might disagree with the legislative body as to "whether it was necessary, or even remotely useful," to engage in the activities for which they are sued, "we have no authority to oversee the judgment of the Committee in this respect or to impose liability on its Members if we disagree with their legislative judgment."  *Id.* at 313.  The Court held that the acts complained of were all "integral part(s) of the deliberative and communicative processes" and were thus protected by the Constitution's Speech or Debate Clause.  *Id.* (quoting *Gravel v. United States*, 408 U.S. 606, 625 (1972)).  The Supreme Court noted however, that "everything a [legislator] may regularly do is not a legislative act within the protection of the Speech or Debate Clause."  412 U.S. at 313.  The Court thus held in *McMillan* that legislators were not immune from liability for distributing the objectionable materials "beyond the reasonable requirements of the legislative function."  *Id.* at 315-316; *cf. Hutchinson v. Proxmire*, 443 U.S. 111, 127-28 (1979) (holding that a legislator "may be held liable for republishing defamatory statements originally made in either House").

Defendant maintains that his prayers were not outside the legislative forum because they were uttered during the legislative meeting, and thus they are *per se* immune pursuant to *McMillan*. But there is no precedent regarding legislative prayer directly on point.  The Eighth

Circuit addressed legislative immunity in *Chambers v. Marsh*, 675 F.2d 228, 231 (8th Cir. 1982) *rev'd on other grounds*, 463 U.S. 783 (1983), in which the plaintiff challenged the Nebraska legislature's practice of opening session with prayers not by a legislator but by a chaplain paid for by state funds.  The Eighth Circuit stated that, with respect to defendant's legislative immunity argument, "no speech activity by any legislator is at issue.  Moreover, the deliberative process of the legislature will not be impaired to any degree by judicial resolution of the claim brought by [plaintiff]."  675 F.2d at 232.  Although the Supreme Court reversed the Eighth Circuit's holding that the Nebraska legislature's practice violated the Constitution, the Supreme Court did not address the legislative immunity issue.  463 U.S. 783.  Neither the Eighth Circuit's nor the Supreme Court's opinion in *Marsh* provide definitive guidance regarding legislative immunity in this case.  However, the Eighth Circuit acknowledged that the "deliberative process" was not at issue with respect to prayer at the commencement of legislative sessions. Further, legislative immunity applies to actions "taken in furtherance of legitimate legislative activity."  *Hinshaw*, 436 F.3dat 1008.  The Eighth Circuit and other courts' extensive discussions on what constitutes a "legislative act" defies defendant's position in favor of a "*per se*" rule. Recently, for example, the Eighth Circuit reiterated that

> When determining whether an act is legislative, the Supreme Court applies a functional test.  *Redwood Vill. P'ship v. Graham*, 26 F.3d 839, 840 (8th Cir. 1994) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 810, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Legislation ... looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Prentis v. Atl. Coast Line Co.,* 211 U.S. 210, 226, 29 S.Ct. 67, 53 L.Ed. 150 (1908) (quoted in *Brown v. Griesenauer,* 970 F.2d 431, 437 (8th Cir. 1992)). For example, passing an ordinance is a legislative act. *Bogan,* 523 U.S. at 55, 118 S.Ct. 966.

> Under this functional test, "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54,

-7-

118 S.Ct. 966. A legislator's potential or alleged motives are "wholly irrelevant to [the] determination of whether [a legislator is] entitled to legislative immunity." *State Emps. Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 90 (2d Cir. 2007) (citing *Bogan,* 523 U.S. at 55, 118 S.Ct. 966). The issue is " 'whether, *stripped of all considerations of intent and motive,* [the petitioner's] acts were legislative.'" *Id.* (alteration in original) (quoting *Bogan,* 523 U.S. at 55, 118 S.Ct. 966).

*Leapheart*, 705 F.3d at 313-14. Looking to the nature of defendant Griesheimer's act — a prayer that looks to the past and present, offers thanks, and requests protection for the Armed Forces — this Court cannot say that defendant's prayers were functionally legislative. Although defendant articulates admirable motives for his prayer invocations, the Court must decline to consider those motives because, first, the Court is not permitted to consider matters outside the pleadings on a Rule 12(b)(6) motion to dismiss (*see* Fed. R. Civ. P. 12(d)), and, second, to the extent the Court could consider such matters, binding precedent is clear that the legislator's motives or intent are "wholly irrelevant." *Leapheart*, 705 F.3d at 714 (quoting *Rowland,* 494 F.3d at 90). Moreover, relief can be provided to plaintiff here "without proof of a legislative act" and "[n]o threat to legislative independence [is] posed." *See Gravel*, 408 U.S. at 621; *see also Marsh*, 675 F.2d at 232 ("the deliberative process of the legislature will not be impaired to any degree by judicial resolution of the claim brought by [plaintiff]."). Finally, in contrast to situations like that in *Johnson*, the speech in this case — the specific content of the prayer — did not pertain to deliberating or passing any law. Therefore, legislative immunity does not attach.

Thus, defendants' motion is denied with respect to legislative immunity.

## B.    Motion to Dismiss Official Capacity Claims

The Court must also address defendant Griesheimer's argument for dismissal of the claims made against him in his official capacity. Defendant suggests that because he was acting only in his individual capacity when he uttered the prayers at issue, he was not acting pursuant to

any Franklin County policy or custom.  Therefore, defendant argues, claims made against him in his official capacity must be dismissed.

A 42 U.S.C. § 1983 suit against a county commissioner in his official capacity is treated as a suit against the county.  *See Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998).  The county "may only be held liable for constitutional deprivations if the deprivation is the result of a policy or custom" of the county.  *Id.*  A "policy" is "an official policy, a deliberate choice of a guiding principle or procedure made by the ... official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).  A "custom" is a practice "that is not authorized by written law, but which is 'so permanent and well-settled ... as to [have] the force of law.'" *Russell v. Hennepin Cnty.*, 420 F.3d 841, 849 (8th Cir. 2005) (quoting *Harris v. City of Pagedale*, 821 F.2d 499, 504 n. 7 (8th Cir. 1987) and  *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)).

Defendant maintains (1) the Commission's policy was to have a moment of silence, not a prayer, (2) he acted entirely on his own, and (3) the short duration of time over which the prayers occurred (12 months) could not have given rise to a custom.  Plaintiff counters that defendant Griesheimer's acts made the prayer invocations a County Commission custom and that defendant's affidavit even refers to prayers as the Commission's "practice."  It is clear to the Court that there is, at least, a question of fact as to this matter.  As a result, defendant's motion will be denied.

### C.    Motion to Dismiss Based on Political Question Doctrine (#42)

Next, defendants contends that the issue at the heart of this case — whether the legislative prayers at issue were "sectarian" such that they violated the Establishment Clause —

is a nonjusticiable political question.  The "political question doctrine" is a narrow exception to the general rule that the judiciary "has a responsibility to decide cases properly before it, even those it 'would gladly avoid.'"  *Zivotofsky ex rel. Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1427 (2012) (quoting *Cohens v. Virginia*, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821)).  A political question exists "where there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it."  *Id.* (internal quotations omitted).  In such a case, the Supreme Court has held that "a court lacks the authority to decide the dispute before it."  *Id.*

Defendants posit that there are no judicially discoverable and manageable standards for determining whether a prayer is sectarian.  Defendants' position is belied by numerous cases that address similar matters.  *See, e.g.*, *Marsh*, 463 U.S. at 793 n.14, *quoted in County of Allegheny v. American Civil Liberties Union Greater Pittsburgh Chapter*, 492 U.S. 573, 604 (1989) (noting that the legislative prayers at issue in *Marsh* did not violate the Establishment Clause "because the particular chaplain had 'removed all references to Christ.'"); *Lee v. Weisman*, 505 U.S. 577, 588 (1992) (defining, in context of school prayer case, "sectarian" prayers as using "the ideas or images identified with a particular religion"); *id*. at 641 (Scalia, J., dissenting) (defining sectarian prayer as one "specifying details upon which men and women who believe in a benevolent, omnipotent Creator and Ruler of the world are known to differ (for example, the divinity of Christ)."); *Galloway v. Town of Greece*, 681 F.3d 20, 28-9 (2d Cir. 2012), *cert. granted*, 81 U.S.L.W. 3336 (May 20, 2013) (No. 12-696);  *Pelphrey v. Cobb County, Ga.*, 547 F.3d 1263 (11th Cir. 2008).

Regardless, as the parties have acknowledged (*see* #77, 78), the Supreme Court has

-10-

recently granted certiorari to the parties in *Galloway*, a case which involves whether legislative prayer offered by volunteers from the community violates the Establishment Clause.  As defendants put it, the Supreme Court is "likely to clarify or restate the governing test for legislative prayer" in the *Galloway* decision.  (#78.)   The Second Circuit's opinion in *Galloway* highlights the trouble inherent in navigating the Supreme Court's jurisprudence regarding legislative prayer, but ultimately the Second Circuit held that it could determine whether the town's practice of opening its meetings with a prayer, "viewed in its totality by an ordinary, reasonable observer, conveyed the view that the town favored or disfavored certain religious beliefs."  681 F.3d at 29.  That Court concluded that the "town's prayer practice must be viewed as an endorsement of a particular religious viewpoint."  *Id.* at 30.

It is likely that the Supreme Court's result in *Galloway* will settle the defendants' political question argument.  As a result, this Court will hold in abeyance defendants' argument regarding the political question doctrine pending the Supreme Court's resolution of *Galloway v. Greece.*

### D.     Motion to Dismiss Based on Standing (#44)

Defendants contend that plaintiff lacks standing under Article III of the Constitution to bring this lawsuit.  They state that her "psychological unease" as an "offended observer" of the legislative prayers is insufficient.

Defendant is correct that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).  In order to support an actual controversy,

-11-

plaintiff must have standing; that is, plaintiff must allege an injury that is "distinct and palpable," and not one that is "abstract" or "conjectural" or "hypothetical." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citations omitted).

The Eighth Circuit holds that to establish standing for an Establishment Clause violation, plaintiff must demonstrate "direct and unwelcome personal contact with the alleged establishment of religion." *Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1022 (8th Cir. 2012) (quoting *ACLU Neb. Found. v. City of Plattsmouth, Neb.*, 358 F.3d 1020, 1029 (8th Cir. 2004), *rev'd en banc on other grounds*, 419 F.3d 772 (8th Cir. 2005)). Plaintiff has sufficiently alleged standing here. She alleges she was injured because she repeatedly came into unwelcome contact in her own community with the prayer practice, she felt excluded and offended by the practice, and she felt coerced into altering her own behavior (i.e., by bowing her head as instructed during prayers). In *Americans United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, prison inmates alleged "they altered their behavior and had direct, offensive, and alienating contact with" a program they contended violated the Establishment Clause. 509 F.3d 406, 419 (8th Cir. 2007). The Court held that "An injunction can remedy this injury. The inmates have standing." *Id.* Here, plaintiff claims that although defendants have voluntarily stopped the prayer practice of which she complains, she is entitled to nominal damages for her feelings of exclusion.

Defendants' reliance on *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982), is misplaced. There, plaintiffs objected to the government's sale of surplus goods to a church for $0 (after the church received the benefit of a "100% public benefit allowance") and claimed an Establishment Clause violation. 454 U.S. at

-12-

756-57.  Plaintiffs read about the conveyance in a news release, and the Court held that they lacked standing because "they fail[ed] to identify any personal injury suffered by them *as a consequence* of the alleged constitutional error."  *Id.* at 765.  The Court clarified, however, that "we do not retreat from our earlier holdings that standing may be predicated on noneconomic injury."  *Id.* at 766.  Defendants' attempt to characterize this case as akin to the plaintiffs in *Valley Forge* fails because here, plaintiff came into personal contact with the allegedly unconstitutional practice.  She did not, for example, read about the prayers in the newspaper and find the concept offensive in theory.  She alleges she experienced the injury herself, in person, and that is sufficient "unwelcome personal contact" under this Circuit's precedent.  *Red River Freethinkers*, 679 F.3d at 1022.  Because this Court finds that plaintiff has properly alleged standing, it need not address whether plaintiff has also sufficiently shown she has taxpayer standing.  Defendants' motion to dismiss based on standing will be denied.

## III.    Motion to Compel (#47)

Discovery in this case was to commence on September 17, 2012 and be completed by January 28, 2013 (pursuant to an agreed-upon extension).  (#31.)  Defendants were, during the discovery period, under the impression that (1) plaintiff would turn over audio recordings of the prayers that are the subject of this litigation, and (2) plaintiff would be made available for deposition regarding her alleged injuries.  Then, defendants say, well after the discovery period closed, despite oral and e-mail communication about those matters, plaintiff told defendant that she would not turn over the recordings or appear for a deposition.

Plaintiff argues that defendants did not make formal or informal discovery requests and that defendants' motion is out of time.  Further, plaintiff contends that the records of the prayers

are privileged work product.

Although defendants waited to file their motion to compel until after the February 8, 2013 deadline, plaintiff's counsel did not correct defendants' apparent misunderstandings until the week of February 18, 2013.  Further, defendants filed their motion to compel after receiving plaintiff's motion for summary judgment, which attached plaintiff's declaration attesting to her injuries.  Defendants seek to depose plaintiff to better ascertain her alleged injuries and damages, which is permitted by Federal Rule of Civil Procedure 56(d): "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may...allow time to obtain affidavits or declarations or to take discovery."  Further, defendants note that plaintiff's declaration quotes at length from the recordings she made at Commissioner meetings, and defendants desire access to the recordings of the prayers and comments pertaining to them. Defendants' delay in filing the motion to compel, then, is explained by the filing of plaintiff's summary judgment motion, and Rule 56(d) provides an avenue for the relief defendants seek.  Aside from Rule 56(d), plaintiff's counsel's failure to alert defense counsel to the fact that she would not appear for a deposition or produce the tape recording excuses defendants' delay.

Plaintiff now claims that the records are privileged work product because she "collected and prepared them in anticipation of litigation."  (#50 at 8.)  The Court acknowledges that although "'work product' may be, and often is, that of an attorney, the concept of 'work product' is not confined to information or materials gathered or assembled by a lawyer." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 603 (8th Cir. 1977).  Even assuming the tape recordings are work product, however, defendants are entitled to their production.

-14-

First, it is noteworthy that plaintiff did not object to producing the tapes when given the opportunity, as plaintiff's counsel did not respond at all to defense counsel's January 16 and 24 emails which made clear that defendants expected to receive the tapes.

Second, if the tapes are work product at all, they are clearly "ordinary work product," as they contain "raw factual information." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (contrasting ordinary work product with opinion work product, which enjoys near absolute immunity from production).  Ordinary work product may be discoverable where "the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means." *Id.* (citing  Fed. R. Civ. P. 26(b)(3)). Both criteria are met here.  With respect to substantial need, plaintiff quotes heavily from the tapes in her summary judgment papers, and defendant Griesheimer does not believe that he instructed the attendees to bow their heads except during the moment of silence.  Short of employing time travel, defendants have no way to obtain plaintiff's recordings or even their "substantial equivalent."

Third, defendants suggest that the recordings are available to them under Rule 26(b)(3)(C), which states that a person may "on request, ...obtain the person's own previous statement about the action or its subject matter," and "[i]f the request is refused, the person may move for a court order."  Thus defendant Griesheimer maintains that recordings of his own prayers at the Commission meetings should be produced.  Plaintiff disputes that Rule 26(b)(3)(C) is applicable because, she argues, the recordings are not "about the action or its subject matter" but rather the recordings "are the incident itself."  (#50 at 9.)  Plaintiff's distinction is dubious, but the Court need not resolve this question because defendants meet the requirements for production of work product under Rule 26(b)(3)(A).

Finally, prejudice to plaintiff will be minimal if limited discovery is allowed, particularly

because plaintiff has already consented to delaying adjudication of this matter on the merits until after the Supreme Court decides *Galloway*.  (*See* #77 ("Because the challenge here is to a past practice, not an ongoing one, there is little, if any, harm to awaiting the Supreme Court's decision before ruling on the dispositive motions in this case.").)  There is no question that the recordings are ordinary work product and that they do not contain the thoughts and reflections of plaintiff's attorneys.  Defendants show a substantial need for access to the recordings, and defendants have no way to access the information therein in any other way.   Defendants may also now depose the plaintiff outside the discovery period.

The Motion to Compel will be granted, and the parties shall have until July 8, 2013 to arrange for and complete production of the recordings and plaintiff's deposition.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion to Dismiss Based on Legislative Immunity (#42) is **DENIED**, but the Motion to Dismiss based on the Political Question Doctrine is **HELD IN ABEYANCE.**

**IT IS FURTHER ORDERED** that defendants' Motion to Dismiss Based on Standing (#44) is **DENIED**.

**IT IS FINALLY ORDERED** that defendants' Motion to Compel (#47) is **GRANTED** as provided herein.

Dated this  7th  day of June, 2013.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE